President of the United States, John F. Kennedy. today is an appeal from the Court of Federal Claims, case number 155114. Mr. Christensen, will you pronounce that Nacchio or Nacchio? I believe it is Nacchio. Nacchio v. United States. Mr. Christensen, you want three minutes for rebuttal? Yes, please. Okay. You may begin. Thank you, and may it please the court. The court below erred in two respects. First, in holding that Mr. Nacchio was entitled to a tax deduction for a criminal forfeiture payment he made to the United States as part of the sentence for insider trading. Second, the court erred in holding that his criminal conviction did not collaterally stop him from seeking to establish in this case that it appeared to him that he had an unrestricted right to the proceeds of his insider trading offenses. Do we need to decide the first question if we decide the second question in your favor? Yes, Your Honor. If the court rules that Mr. Nacchio is not entitled to a deduction, then he is not entitled to recover any refund whatsoever. If the court, however, rules that he is collaterally stopped from the benefits of Section 1341, then he would be entitled to a small refund in the amount of $6,000 or so. The first issue, however, would be dispositive, and the court would not necessarily need to reach the second issue. He gets a small refund, and then that amount of his refund depends upon whether or not we agree with his so-called cross-appeal. Isn't that correct? Yes, there is a potential that that amount could vary depending on whether the court agreed that this was a business assistance. Assume that we decided in your favor on the second issue of collateral estoppel, then can we just leave the first issue hanging, or do we have an obligation to respond to what he described as a cross-appeal because it does make a difference to the dollars? According to your stipulated settlement, the amount of money that the federal government is going to allow a return of taxes paid, I guess is what it is, depends upon whether or not the deduction was under 162 or 165, and if under 162, which section, right? Right. So, regardless, if the court only held for the government with respect to the second issue, then Mr. Nacchio would be entitled to some refund, whether it's $6,000 based on a deduction under section 165 or a little higher. The court has already decided that he's got a 162, what is it, 2 deduction? A 165C2. 165C2, right? And he's arguing for a 165-1 or a 162, right? That's correct. So, either way, if the court only reached the second issue, he would be entitled to an amount of a refund, but if the court holds in favor of the government... I understand that. That's what I'm trying to get at, is simply if we decide in your favor on collateral estoppel and say he's collaterally estopped, so he gets no relief under that particular statute, right? That's right. You've still got dangling the question of whether or not he was entitled to a deduction. That's the lower court held he had an entitlement to a 165C2, right? Yes. Yes, that is correct, Your Honor. Now... Do we have to adjudicate that issue? Well, if the court holds that Mr. Nacchio is not entitled to a deduction at all... Period, of course. ...under section, because it's barred by section 162F or public policy, then there would be no refund whatsoever. I understand that. Yes, Your Honor. So section 162F provides that in the context of a trade or business, no deduction shall be allowed for a fine, any fine or similar penalty paid to a government for the violation of any law. The court below agreed, and the parties do not dispute on appeal, that a deduction that would be barred by section 162 would also be precluded under section 165 on public policy grounds. The court here held that section 162F did not bar a deduction, particularly because the court held that Nacchio's forfeiture was not a fine or similar penalty. Because it was restitution. That's what the court concluded, that it was restitution. Is that really what the court concluded? Because I really read the lower court's decision to be based more on the notion that this was a Yes, Your Honor. The forfeiture, and the courts have consistently held that the purpose of a forfeiture is to punish a defendant who's been convicted of a serious crime by disgorging the illicit gains. That is the punishment imposed. And so yes, it's a disgorgement of the illicit gains imposed as a punishment. And the courts have consistently held and characterized forfeiture in that manner. And so the fact that the gains were disgorged here supports the government's position and is consistent with the case law holding that forfeitures are intended to punish by disgorging ill-gotten gain. Whether or not there were victims from whom the ill-gotten gains had been taken. That's right. Restitution is a distinct remedy with a separate purpose. And the case law also clearly distinguishes between forfeiture and restitution. On the one hand, as I said, forfeiture is designed to punish by disgorging the ill-gotten gains. It shows that crime does not pay. On the other hand, restitution is intended to compensate victims. And it's paid to the victims. And the calculation of a restitution amount is based on the victim's loss. As opposed to a forfeiture penalty, which is based on the gain from the criminal activity. Well, here are the money that actually got paid to, I guess, the class action plaintiffs based on their loss. Excuse me? The amount that each individual person, and I guess there were class action plaintiffs received, was based on their loss. The so-called restitutionary payment, when they cut the checks to the people, that was based on their loss. They received a pro-rata share, apparently, based on what their losses were. They filed claims and said, this is the amount we claim to have lost. And then there was maybe not enough in the pot to satisfy the whole thing, but they prorated it to their loss. Yes, that's correct, Your Honor. But the important thing here is that the forfeiture amount, the $44 million, was not calculated at all with respect to the loss of the victims. There was no determination in the criminal case as to what amount any victim had suffered in damages. Instead, by statute, the forfeiture amount was required to be determined to equal the net profit of Mr. Nascio's gain through his criminal insider trading offenses. So that was the calculation of the forfeiture in this case. It was based on his gain, and the loss suffered by any victims played no part in that calculation. So this just means that the government gets paid twice, because the government gets taxes on this $44 million gain, and then gets to keep the $44 million without any deduction. The policy behind Section 162F is that in the case of a fine or similar penalty that's paid to a government for the violation of law, such fines or penalties must be paid with after-tax dollars. That's the policy that is manifested in Section 162. But the answer to my factual question is yes. Yes, so essentially the penalty is paid with after-tax dollars, and the person paying the penalty is not entitled to deduct that amount. In other words, even though the person has already paid taxes on that amount. So in any case where Section 162F applies, that would be the situation. I guess if I'm a taxpayer and I'm hit with a fine, the fine is going to be paid with after-tax dollars if it comes out of my bank account, because my bank account has been accumulated only with after-tax dollars. So I suppose you could say that that's parallel. It does sound like there is a kind of double hit here, but you're saying that's what the statute specifically requires. That is the policy behind Section 162. But there was a separate fine. There was a separate fine. He's not asking for any kind of deduction as it relates to that fine. No, and there's no argument with respect to that. And, Your Honor, with respect to the forfeiture as well, the Supreme Court, the forfeiture was either a fine or similar to a fine. The Supreme Court in the Bajakajian case, which was an Eighth Amendment case, explained that forfeitures are fines if they constitute punishment for an offense. And the cases are consistent that a forfeiture and a criminal forfeiture, as we have here, are intended to punish the defendant for guilty conduct by disgorging the ill-gotten gains. What about the fact that all of those cases that you're talking about were based at a point in time where there had not been this congressional decision to sort of make sure that those forfeited amounts get to victims? In other words, yes, that's how everything worked. I did this a lot at the district court. Take people's cars, take people's houses, take anything that was their ill-gotten gains, and yet there were victims out there who were never getting paid. So Congress makes a decision that says, no, we need to basically morph this forfeiture process into a process where we can give recompense to the victims. So I believe Your Honor is referring to the Civil Asset Forfeiture Reform Act of 2000. Again, Congress's intent and the purpose manifested in the legislative history of that act was focused on protecting innocent property owners from civil forfeitures of their property. And so what CAFRA did was to enact safeguards to protect innocent owners from the wrongful seizure of their property by the government. And one of the critical ways that Congress did that was by enacting section 2461 paragraph C, which is a forfeiture statute at issue in our case, in order to encourage the use of criminal forfeiture in lieu of civil forfeiture. Because in a criminal forfeiture case, there's no possibility that the forfeiture is going to be imposed upon an innocent owner. Rather, it's only imposed at the culmination of a criminal proceeding that results in a conviction of an underlying felony, and it cannot be imposed on an innocent person. And so Congress enacted CAFRA, and as relevant here, the purpose was to encourage a greater use of criminal forfeiture, which cannot be used to protect the innocent owner. All of that may be true. I'm confident it is true. But that doesn't, I think, answer Judge O'Malley's question, which is that if you have a system in which, by virtue of the combination of statute and regulation, you've converted, in effect, at least with respect to those crimes as to which there are identifiable victims, a forfeiture system into, in effect, a restitution system, isn't it appropriate, as the trial court did here, to treat the whole transaction as a form of restitution? That's really, I think, the heart of what the trial court was doing in this case. So if you could address that. Yeah, I would strongly disagree with that. In CAFRA, Congress did give the Attorney General discretion to use amounts that were forfeited to grant remission, but by no means was that a requirement. This court has held, and other courts have held, that the remission process, which was totally separate from the criminal proceeding in this case, is purely a matter of administrative grace, whether the Attorney General decides to use the funds in that manner. Do you think the regulations confine that exercise of administrative grace in a meaningful way? I guess that's the next question. I don't think so. I think the Attorney General has sole discretion whether to grant those petitions or to use the forfeited funds for any of the other number of authorized uses that are specifically enumerated in the statute. Is there any mandatory language in the regulations like the Attorney General shall remit unless he fines? Absolutely not. It uses the term may, the Attorney General may. But may only in very limited circumstances, right? I mean, he's very cabined in terms of his ability to not give it to victims when victims can be identified. No, no, I don't agree with that. He has, under the statutes and the regulations, he has complete discretion and he's not required to grant remission. There are a number of other authorized uses. Yeah, but it's not like he can pick from column A or column B or column C. In other words, he has to go to column A unless there's a more extreme justification to go to column B or C, right? That's not correct, Your Honor. That's not the way that I read the statute or the implementing regulations with respect to remission. And I might add that when we get away and start looking at the government's subsequent use of the funds, we're starting to stray from the purpose for which Section 162F was enacted, which was to deny a deduction in cases where allowing a deduction was deemed to violate public policy. The court below should not have looked beyond the criminal judgment itself in determining whether the forfeiture was deductible. So in this circumstance, because the statute requires forfeiture and doesn't allow for a criminal judgment that includes a restitution, then you would never have, no matter what happens to the money, you would never have something that would be viewed as restitutionary. Is that your view? Well, Your Honor, here restitution simply was not applicable. Right, that's what I'm saying, because the criminal statute under which it was charged didn't allow for restitution. And had Mr. Nascio been ordered to pay restitution in the criminal case, that would have been deductible.  Restitution was inapplicable is what the district judge concluded. Under what circumstances does the court have the authority to order restitution in a criminal setting? My understanding is that there was no applicable restitution statute in the whole case. Is there any in the whole case? Yes. Well, what about the Stevens case? That was a case where the judge, as a condition of probation, imposed an obligation of restitution, right? That's right. Would a judge be free, and would Judge Nottingham or Judge Krieger have been free to do that in this case? I'm not sure what the answer to that is. My understanding is that there was not an applicable restitution statute. I'm not sure whether there has to be a statute in order for the judge to do something which is not at least prohibited by law as a condition of probation. Your Honor, I'm not sure what the answer to that question is, what discretion the district court would have had to grant restitution. Okay. In Bailey, the Sixth Circuit held that in characterizing a payment for purposes of Section 162F, the court must look to the origin of the liability given rise to that forfeiture. And here, it was the criminal judgment which required Nascio to forfeit the money to the United States. The judgment said that restitution was not even applicable. So Mr. Nascio never paid restitution to any victims, and the government's discretionary decision to do so after the fact is not relevant to the question of deductibility under Section 162F. Your time is up. We'll give you two minutes for rebuttal. Is it Mr. Gentile or Mr. Gentile? Thomas Gentile, Your Honor. Gentile. Okay. Even better. Thank you, and may it please the Court. At the oral argument on the party's cross motions for summary judgment before the Court of Claims, Judge Williams posed the fundamental question that this case presents. Why should Mr. Nascio pay taxes on money that he didn't get to keep? Judge Williams pointed out that day, normally in American jurisprudence, one pays taxes on income that the taxpayer gets to keep. This is a basic premise of tax law. In the Stevens case, the Second Circuit applied this premise in circumstances very similar to those in Mr. Nascio's case. The Second Circuit held that because Mr. Stevens has already paid taxes on the funds that he ultimately paid as restitution, disallowing the deduction for repaying those funds would result in a double stink. But isn't the problem there that there was an actual restitution order in that case? Your Honor, labels don't matter here, whether you call it restitution or compensatory payment or remedial payment. The case law regarding Section 162F and the public policy exception holds that you need to look at the economic reality of the transaction to determine whether a payment is compensatory in nature or punitive in nature. When you say in nature, when do we decide that? Do we decide after the fact to see if someone got some money or do we look at whether it's classified as a forfeiture or a restitution? The government submits that there's something inherent about forfeiture that is necessarily punitive, but that is not the case. Okay. The government would say that there's something inherent about forfeiture that necessarily Criminal forfeiture. We're talking about criminal forfeiture. That's what's applicable in this case. Right. But there are various differences between civil and criminal forfeiture that may be obtained here. But the government's argument is that criminal forfeiture is punitive. Well, remember, Your Honor, respectfully, that Stevens was a criminal case. I understand that. And Caravata, which is from the tax court, was also a criminal case. But there was no forfeiture in Stevens. Yes, but there were restitutionary or compensatory payments, compensatory in nature that were found to be deductible. Here, the issue of first impression in this case is whether there is something necessarily punitive about forfeiture that distinguishes it from any other payment, whether you call it restitutionary or compensatory in nature. Well, in this particular case, the criminal section under which he was charged allows for forfeiture but does not authorize a restitution payment. It does not specifically authorize restitution. But the facts of this case, which have never been in dispute, is that the funds that were forfeited were channeled to qualified and identifiable victims and given to them as compensatory payments for losses that they incurred due to the conduct that was the subject of the forfeiture. Could the judge have ordered restitution, for instance, as a condition of supervised release in this case? Well, this is not a case that involves a conditionary or an in-lieu payment. This is a payment that was agreed to by all parties at the resentencing. The prosecutor presented to the resentencing judge the intention that these funds, the forfeited funds, would be used to compensate victims. That was stated by the government's attorney at the resentencing hearing, and that belies the notion that this was a subsequent act of the attorney general. If it was represented at that hearing, the attorney general wasn't going to turn around and at whim keep these forfeited funds in the government's coffers when, under the terms of the CAFR statute, there were identifiable and qualified victims to whom the money could be channeled. But you didn't really answer my question. Despite the fact that there was an intention to pass this money on, there was never an order that was called restitution, right? No, there was no order that was called restitution. The very sentencing judge the second time around said that this is not compensation. The judge did not say this was compensation. He said this is not restitution. Not restitution. That's right. And our position all along, Your Honor, has been that it doesn't matter if it fits into the neat little box of restitution. If it's a payment that's compensatory in nature, it is deductible. So your position then is if the government had kept this money, then you would lose this case. That's not what happened, Your Honor. That's why I'm asking. And our position is that the fact that the money was channeled to qualified and identifiable victims is determinative. Is your position that if the government had kept the money, that you would have no argument? In that case, in that hypothetical, it would not have been a compensatory payment, so we wouldn't be here today. Okay. Yeah. All right. You would lose. Right. So in each case, we have to ultimately look forward to see what the Attorney General decides to do. We need to look forward to see what actually happened. I don't believe the Attorney General had a broad discretion here. I thought you conceded a footnote 18 in your red brief that Bailey applies, that the characterization of the payment turns on the origin of the liability giving rise to it. And I read your footnote to say, yeah, you agree with that. You just make some argument. The characterization of the payment for purposes of 162F turns on the origin of the liability giving rise to it does not mean that just because it happened in a criminal case or just because it carried the label of forfeiture that it's non-deductible. Well, why not? Because if you look at, for example, the Fresnius case from the First Circuit, that holds that we need to look at the economic reality of the transaction. That is the origin of the liability. Isn't the origin of the liability here the conviction and the sentence? But the conviction and the sentence in our argument, Your Honor, are not determinative of whether the payment is deductible. It's not determinative of whether or not it's a penalty? Well, Section 162F... They say, you know, what we're asking you to do is we're discharging an amount of money that has nothing to do with loss. We have no idea what the status of the class action plans is. You got 44 million bucks that you should not have had. You, Mr. Naccio, disgorge it. That doesn't sound like it has anything at all to do with distributing money to the victims of the insider trading. At the origin, at the time of the liability giving rise to it. As I say, I'd sell you to concede that we apply bailing. Your Honor, the phrase, the characterization of a payment turns on the origin of the liability giving rise to it, is not determinative of deductibility. The fact that this took place in a criminal proceeding is not determinative of deductibility. You mentioned that it's not a penalty. Aren't you being circular? I'm sorry, Your Honor? I mean, you're saying, well, what happens way down the end that has nothing to do with what was in the mind of the sentencing judge or the reason for imposing the forfeiture has nothing to do with characterization because you look later on to see what happened. That's what you're saying. Well, one thing we need to remember about the unique facts of this case, Your Honor, is that it was expressly stated. But you agree that the $44 million has got actually nothing to do with the amount of the loss. That's the point that your adversary is making. The $44 million is money that accrued to Mr. Naccio. Illegally. Mr. Naccio was convicted. We don't dispute that. Illegally. Yeah. He had no entitlement to that money. And he was made to forfeit that money. That's right. That's when you're convicted of a crime, you stole some money from the bank, you have it back. This is not like a bank robbery, Your Honor. This is a qualitatively different crime because there were identifiable and qualified victims to whom the money could be routed. Well, the bank is a qualified victim of the bank. You can get money back from the bank. You can, Your Honor, but... But nice people did. For purposes of deductibility, particularly with regard to the fine or similar penalty qualification of 162F, this is not a penalty that is similar to a fine. A fine goes into the coffers of the government and never has anything to do with identifiable and qualified victims. This is qualitatively different from a fine under Section 162F because this amount of money was routed to identified and qualified victims. I want to emphasize what happened at the resentencing hearing. The prosecutor stood in front of the judge and said it is the intention of the government that this money be used to compensate victims. So this wasn't something that happened down the line. It was something that happened at the time of sentencing. Let me ask you this. There is a statute now in place. Victim's rights have become a major issue in recent years. There is a statute, I believe, that says fines will be put into a fund which may be used to compensate victims, perhaps not specific victims of specific crimes. And I understand you draw that distinction. But suppose that in a particular case there's a fine and the attorney general says, you know what, in this particular case the victim suffered a grievous harm and there's a $10,000 fine and I intend to use that fine specifically to compensate this victim. Would that fine then become deductible in your view? Well, first of all, when you're speaking about the statute, Your Honor, I believe you're speaking about the Crime Victims Fund. Right. And that is a fund that routes money that is paid as fines to general government programs to help victims of crimes. Right. And suppose in a particular instance the attorney general says, I am going to make sure if there's a $10,000 fine, $10,000 is going to the victim of this crime. I believe this is a very important distinction, Your Honor. I don't think a judge or the attorney general has the authority to do that. Well, the attorney general surely has the authority to say that $10,000 out of the fund will go to a particular victim, I would assume. I don't believe that's the case, Your Honor, respectfully. I believe that the Crime Victims Fund Act requires that the money paid as fines go into this general fund. Right. And I do not believe there is discretion of the attorney general to direct money out of that fund. But somebody has the discretion to direct money out of the fund because money comes out of the fund. Thank you. It's never directed to specific victims who have been harmed by crime. It's directed to general programs of the government, including state governments, which are used to help victims of crimes generally. Somewhere down the line, it might be used to help someone who has suffered some crime, but it is not the purpose. Okay. Well, let's suppose there were the capacity to direct funds to particular victims out of the fine fund. If that happened in a particular case, would that suddenly convert the fine into being deductible? Well, that's your argument, Your Honor, is that it would work a conversion from a fine into a penalty that is dissimilar to a fine. The hypothetical that you're posing strips a fine of the characteristic that makes it a fine, which is the fact that it does not go to qualified and identifiable victims. I see. Okay. Before you sit down, we need to turn to your alternative, your cross-appeal, because I don't really view that as an actual cross-appeal. It's really an alternative basis to support the judgment. So let's give you a few extra minutes to talk about that, and then we'll let the government respond. Thank you, Your Honor. First of all, if this Court finds that Mr. Naccio's forfeiture is deductible under Section 1341, there's no need to touch these issues at all, whether it's deductible under Section 162, 165C1, or 165C2. We read the opinion of the Court of Claims as holding that the forfeiture was deductible under Section 165 without necessarily specifying whether it was deductible under Section 165C1 or Section 165C2. We argue in our final brief that it should be viewed as deductible under both Section 162 and Section 165C1 because what was forfeited were the proceeds of compensatory stock options that Mr. Naccio was given as compensation for his services as the CEO of Quest. That would be similar to personal income, right? It is personal income, Your Honor. It was reported on the tax return as personal income. We urge the Court to hold that it is personal income. You're treating it as a business expense. Well, his business, his profession, was being the CEO of Quest. And courts have held that employment income qualifies under Section 162. Thank you, Your Honor. Thank you. You have two minutes for rebuttal. Thank you, Your Honors. No court has ever, no recorded case has ever looked to the subsequent use by the government of an amount that's paid as a fine or penalty to determine its character for purposes of Section 162F, including the cases relied on by Mr. Naccio, the Fresenius case in the First Circuit. There was never any mention in any of those cases or any discussion as to how the government, in its discretion, No, subsequent use was brought about when, at the sentencing hearing, the government itself says this stuff's going to be used for a compensatory purpose. A couple points. First, the intent to do something should not be ascribed to the government until an authorized official has approved of that act. And in this case, that didn't happen until 2012. That's not the most persuasive argument you have, so why don't you go to your second point. The other point is that the resentencing hearing itself, which is the earliest evidence that Mr. Naccio points to of an intent on the part of the government to compensate victims through remission, was three years after Mr. Naccio was sentenced to pay over the forfeiture and actually paid that forfeiture in 2007. The resentencing hearing was in 2010, and Mr. Naccio was not entitled to a deduction that he paid in 2007 based on the possibility But his sentence was vacated. The whole sentence was vacated, so it all had to be reimposed. So it's a new sentence. The resentencing, basically, it was the same sentence except that the Tenth Circuit had held that the amount of the forfeiture was required to be the net profits rather than the gross profits that Mr. Naccio had earned. Right, but they still vacate the original sentence. That's how it works. Yes, but substantively, it was the exact same sentence. The sentence, the forfeiture was mandatory, I gather? That's correct. And it was just a question of what the amount was that you say that the Tenth Circuit fiddled with the amount, but the actual imposition was mandatory. So it didn't matter to the imposition of the sentence, I take it, whatever the AUSA said was going to be done with the funds? Right, say that again. It didn't matter to the imposition of the sentence whatever the AUSA said was going to be done with the funds? No, and in fact, the case law is clear that the district judge certainly had no discretion in imposing the forfeiture. It was a mandatory forfeiture imposed by Congress, and the district court had no say in how that would be subsequently used. In this particular case, what is the origin of the liability giving rise to it for Bailey purposes? What's the event? It would be the criminal judgment itself, which imposed the forfeiture amount that Mr. Naccio forfeit the proceeds to the United States. He was never ordered to pay any victims. And that forfeiture was imposed as a mandatory sanction under the statute that we've referred to, Section 2461. So that is the origin of the liability here. When the net profits were calculated and agreed to, were the payment of taxes taken into account? My understanding, I mean, this case, the issue that's in this case, that wasn't. The net profits represent the amount that Mr. Naccio paid to exercise his options, to purchase a stock, the difference between that amount and the sales price that he ultimately sold the stock for. Taxes weren't accounted for in that amount. All right, anything else? Cases will be submitted. This court is adjourned. All rise. The honorable court is adjourned until tomorrow morning. It's an o'clock a.m.